# LOUISVILLE & NASHVILLE RAILROAD COMPANY *et al. v.* CULPEPPER.

1. There was no abuse of discretion in overruling the motion for a continuance.
2. Where the plaintiff alleged in his petition that he was a flagman on a freight-train of a railroad company, and that he was injured while engaged in the discharge of his duties as such, and the evidence of the witnesses, including the plaintiff, showed without conflict that he was a flagman, but there was' conflict as to whether his duties as such required him to assist in uncoupling a train under direction of the conductor, and whether such direction was given, or whether he voluntarily undertook to perform this service in violation of his duties as a flagman, the fact that the presiding judge in his charge inadvertently stated to the jury that the plaintiff contended that he was employed in the capacity "of what is known as a brakeman," (instead of using the word "flagman"), and that he was engaged in work as such, will not require the grant of a new trial, it appearing from the pleadings, evidence, and charge as a whole that the jury could not have been misled by this erroneous use of a word, so as to cause injury to the defendant.
3. The statement in the charge of the court that the plaintiff "contends that under the direction and order of the conductor, who he contends was a superior officer to him in charge of the train, and whose order he would be required to obey under the rules of the railroad companies, that the conductor ordered him to go between and uncouple certain cars," was not so unauthorized by the pleadings and evidence as to cause a new trial.
4. A petition seeking to recover damages for a personal injury caused by a railroad train alleged that the injured person was earning as a flagman $1,000 per annum, had an expectancy of life of 53.6 years, was in line of promotion, and was strong, vigorous, and capable of rendering valuable service, but that as a direct result of the defendants' carelessness he was rendered a helpless cripple for the remainder of his life, having his right foot crushed from the toes to the instep, rendering amputation necessary. The injured person testified, that his foot was so crushed as to render amputation at the instep necessary and to cause suffering; that he had undergone seven operations; that in addition skin was taken from another part of his body and grafted on the wound; that the last operation had been performed about two years after the injury; and that at the time of testifying (nearly two months thereafter) there was still a scab upon the wound. He further testified that at the time of the injury he was drawing different amounts as a salary; that sometimes he drew $74 per month, and at one time $88.96. He was before the jury in person, and used language which called the attention of the jury to his person. *Held,* that under such circumstances a charge in the following language will not require a new trial: "If you find that he has been damaged as set out in his petition, then look to the evidence, facts and circumstances of the case, and ascertain what amount he is damaged by such hurt and injury; and if such hurt and injury decreases his ability to work and earn money, then you will look to the

evidence, facts and circumstances of the case, applying the rules of law given you in reference thereto, and ascertain therefrom whether or not the plaintiff is entitled to recover any amount for such decrease in ability to work and earn money; and if so, what amount he is entitled to recover."

5. The evidence authorized the verdict, and there was no error in overruling the motion for a new trial.

AUGUST 18, 1914.

Action for damages. Before Judge Walker. Warren superior court. July 2, 1913.

*Joseph B. & Bryan Cumming* and *E. P. Davis,* for plaintiff in error. *E. R. Hill, P. C. O'Gorman, Pierce Brothers, M. L. Felts,* and *L. D. McGregor,* contra.

LUMPKIN, J. M. A. Culpepper, by his next friend, brought suit against the Louisville and Nashville Railroad Company and the Atlantic Coast Line Railroad Company, as lessees of the Georgia Railroad and Banking Company, to recover on account of a personal injury alleged to have been received while discharging his duties as a flagman, as a result of negligence in moving the train without a signal. It was alleged that the train on which the plaintiff was working was engaged in transporting interstate freight, and the Federal employer's liability act of 1908 was invoked (35 Stat. 65, U. S. Comp. Stat. Supp. 1911, p. 1322).

1. The ground of the motion for a new trial which assigned error on the overruling of a motion for continuance showed no abuse of discretion by the court in that ruling.

2. In the charge the presiding judge stated that the plaintiff contended that he was employed as a brakeman, and was injured while acting in that capacity; and on another occasion he referred to the contention as being that the plaintiff was a brakeman. The petition alleged that he was a flagman. He so testified, and there was no conflict in the evidence on that subject. He contended that under the order of the conductor he was performing his duty as a flagman. The controversy in that regard was whether his action was in the discharge of his duty as a flagman, or whether he voluntarily undertook to go between cars and do an act which was not legitimately within the scope of his duty. In view of the allegation, the evidence, and the entire charge, we do not think that the mere inadvertence in using the word "brakeman" in lieu of the word "flagman" could have misled the jury, or could have injuriously affected the defendants. *Wilson* v. *State,* 66 *Ga.* 591;

*Southern Bell Telephone Co.* v. *Jordan,* 87 *Ga.* 69 (13 S. E. 202) ;
*Hoxie* v. *State,* 114 *Ga.* 19, 23 (39 S. E. 944) ; *Berry* v. *Clark,* 117
*Ga.* 964 (44 S. E. 824) ; *Southern R. Co.* v. *Merritt,* 120 *Ga.* 410
(47 S. E. 908) ; *Sellers* v. *Savannah Ry. Co.,* 123 *Ga.* 386, 389 (51
S. E. 398) ; *Turner* v. *Elliott,* 127 *Ga.* 338, 341 (56 S. E. 434) ;
*Stewart* v. *Ellis,* 130 *Ga.* 685, 688 (61 S. E. 597) ; *Perdue* v. *State,*
135 *Ga.* 277 (69 S. E. 184) ; *Becker* v. *Donalson,* 138 *Ga.* 634 (75
S. E. 1122) ; *Taylor* v. *State,* 138 *Ga.* 826 (76 S. E. 347).

3. In stating the contentions of the plaintiff, the presiding
judge said that the plaintiff contended that the conductor was his
superior officer in charge of the train, whose orders he was required
to obey under the rules of the companies, and that the conductor
"ordered him to go between and uncouple certain cars." Error
was assigned on this charge, on the ground that neither the petition
nor the evidence authorized a charge that the plaintiff contended
that the conductor ordered him to go between and uncouple the
cars. That particular language was not used, but it did not sub-
stantially differ from the contention as raised by the pleadings and
evidence. The petition alleged that the conductor instructed the
plaintiff to go with him in order that he might show the latter a
certain car to be left at the station where the train then was; and
that the plaintiff, under instructions from the conductor, went to
make the delivery of the car. He testified that the conductor in-
structed him to leave at that place the car which formed a portion
of the train, and that the conductor instructed him to be sure that
he left the right car, and to tie the brakes on it before he left it.
At another time he testified that the conductor told him to do the
work; that he turned the angle-cock of the air-hose on one side of
the car, and the "train-hand" did the same on the other side; that
this was done to keep the air from leaking; that the train-hand
then attempted to uncouple the air-hose, but it did not work, and,
after making several attempts to loosen it, he asked the plaintiff to
assist him, and while the plaintiff was doing so the train was negli-
gently moved, causing the injury to the plaintiff. Under these
facts the charge complained of did not furnish cause for a new
trial.

4. Error was assigned on a charge that the jury should ascer-
tain from the evidence whether or not the injury decreased the
ability of the plaintiff to work and earn money, and whether or not

he was entitled to recover any amount on that account. It was urged that there was no evidence as to the plaintiff's ability to work and earn money being diminished, or as to the amount of such diminution, and that therefore the charge was unwarranted. The injury occurred on January 28, 1911. The trial took place on April 9, 1913. The plaintiff testified in person. He stated, that his foot was so crushed that it had to be amputated at the instep at the first operation; that seven operations had been performed, taking off additional portions of his leg; that skin had been taken from another part of his body and grafted on the wounded member; that he had suffered much from the injury; that the last operation took place on February 25 preceding the trial, and a scab still remained; that at the time of the injury he was drawing different amounts of pay each month; that sometimes he drew $74, and at one time $88.96. He was before the jury, and doubtless they saw the extent of the amputation, and could form an opinion as to its effect upon his ability to continue to work. He used language calculated to call the attention of the jury to his condition. In the brief of evidence, in connection with the statement in regard to the grafting of skin, occurs the word "indicating" in parentheses; and in referring to the amputation at the instep, he used the word "here."

While the evidence on the subject of loss of ability to work and earn money may have been somewhat general, it can not be held that the charge on that subject was entirely without a basis, so as to require a reversal. *O'Neill Mfg. Co.* v. *Pruitt,* 110 *Ga.* 577, 579 (36 S. E. 59); *Southern Cotton Oil Co.* v. *Skipper,* 125 *Ga.* 368 (11), 369 (54 S. E. 110).

5. The evidence was sufficient to support the verdict, and there was no error in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*